UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 1:08-CR-00024

UNITED STATES OF AMERICA                                                            PLAINTIFF

v.

THOMAS A. TURNER                                                                    DEFENDANT

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court upon Defendant's Motion to Preclude Government's Expert Witness, or for a Daubert Hearing (DN 45), and Defendant's Motion in Limine (DN 46). Plaintiff has responded (DN 47 & DN 48). Defendant replied with respect to the Motion in Limine (DN 52). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion to Preclude is DENIED and Defendant's Motion in Limine is DENIED IN PART and GRANTED IN PART.

Defendant Thomas A. Turner has been charged with preparing false tax returns in violation of 26 U.S.C. § 7206(2). Turner was a tax return preparer based in Columbia, Kentucky. From 2003 through 2006, he prepared tax returns for individuals residing in Columbia, Russell Springs, Jamestown, and surrounding areas. The Government alleges that Turner regularly engaged in a common scheme of fraud and deceit when completing returns for his taxpayer customers. For example, Turner allegedly falsely represented that the taxpayers used one or more of their family cars 100% of the time in their side jobs. Turner also allegedly told many of his customers that he was formerly employed by the IRS, implying that he understood tax laws and regulations in such a way to get the best refunds for his customers.

*1. Testimony of Robert L. Hayden*

The Government intends to call IRS Revenue Agent Robert L. Hayden to testify that

certain depreciation deductions caused by Turner on returns he prepared for various taxpayers were improper and in violation of applicable provisions of IRS code and regulations. Turner objects to Hayden's testimony because "(1) it does not meet the *Daubert* standards, (2) it should not be used to evaluate whether other witnesses are telling the truth, and (3) it should not be used to give the jury instructions about the law."

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 provides as follows:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In 2000, Rule 702 was amended in response to the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). In *Daubert*, the Court held trial judges must act as gatekeepers to exclude unreliable expert testimony, 509 U.S. at 592, and it clarified in *Kumho* that this gatekeeper function applies to all expert testimony, scientific and nonscientific, 526 U.S. at 149.

Turner first argues that Hayden's testimony is not necessary to assist the jury's understanding of whether he improperly prepared tax returns. The Court disagrees, and finds that the testimony will assist the jury. *See United States v. Mahoney*, 949 F.2d 1397, 1406 (6th Cir. 1991). Turner is charged with a pattern of fraudulent depreciation deductions included on numerous tax returns he prepared for clients of his tax preparation business. Average jurors do not have specialized knowledge in the field of tax deductions, therefore Hayden's testimony

would help them determine whether Turner violated 26 U.S.C. § 7206(2).

Second, Turner argues that witness testimony on which Hayden will base his opinion is not reliable because the witnesses, Turner's former customers, swore that their tax forms were correct when they submitted them. The Court finds this argument unpersuasive because Hayden will only offer his opinion as to the tax consequences of testimony elicited from relevant witnesses and documents admitted into evidence. The jurors will still determine the weight, if any, to be given to the evidence relied upon by Hayden.

Finally, Turner challenges Hayden's qualifications as an expert. The Court finds that these concerns can best be addressed through cross-examination and jury instructions. The jury may decide what weight to give Hayden's testimony, but his educational background and experience at the IRS qualify him to testify as an expert witness on the rules that apply to the depreciation deductions at issue in this matter.

With regard to Turner's objection that Hayden's testimony will be used to evaluate the truthfulness of other Government witnesses, the Court finds that Hayden will be used as a summary witness, and will not opine as to the truthfulness of other witnesses' testimony. Indeed it would be improper for him to do so. Instead, Hayden will discuss the tax consequences related to the testimony elicited from the witnesses. *See Mahoney*, 949 F.2d at 1406. The jury will still determine whether witnesses are telling the truth and what weight to give their testimony.

Turner's final objection to Hayden's testimony is that Hayden will impermissibly instruct the jury on the applicable law. The Sixth Circuit, however, has held that an IRS expert's opinion as to the tax consequences of certain transactions is admissible. *Mahoney*, 949 F.2d at 1406. Hayden may not state his opinion as to whether Turner intended to prepare false tax returns, but

3

he may testify whether tax liability would arise under certain assumed circumstances. *See United States v. Sabino*, 274 F.3d 1053, 1067 (6th Cir. 2001), *amended on other grounds by* 307 F.3d 446 (6th Cir. 2002); *United States v. Monus*, 128 F.3d 376, 386 (6th Cir. 1997).

Finally, the Court declines to conduct a *Daubert* hearing on this issue. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir. 2001) ("[T]he district court is not required to hold an actual hearing to comply with *Daubert*."). Turner's objections go mostly to the weight of Hayden's testimony.

*2. Evidence Related to Turner's Personal Tax Returns*

Turner filed his personal federal income tax returns for the years 1998 though 2005 on June 20, 2006. The Government wishes to introduce into evidence Turner's statement as to why he did not file the tax returns earlier, as well as his actual returns from 2003, 2004, and 2005. Turner argues that this evidence is irrelevant, confusing, and unduly prejudicial.

Turner allegedly told the IRS that he intentionally did not file his personal tax returns from 1998 through 2005 because of a disagreement with the IRS over an audit of his 1989 tax return. The Government argues that this evidence goes to the motive for the perpetration of the scheme charged in the Superceding Indictment– that he wanted to "screw the IRS"– and is thus admissible under Federal Rule of Evidence 404(b). The Court finds that this evidence has little probative value, which is substantially outweighed by the danger of unfair prejudice to Turner. *See* Fed. R. Evid. 403. According to Turner, the law did not require filing those returns and the IRS has never questioned their accuracy or completeness. Creating an issue over why the returns were filed late would be confusing for the jurors, and may unduly prejudice them against Turner. Furthermore, the Government still has testimony from several of the taxpayers to show Turner's

alleged motive. Therefore Turner's statement, and the fact that he did not file his returns until 2006, is inadmissible at trial.

The Government also seeks to admit Turner's 2003, 2004, and 2005 returns to demonstrate his personal knowledge and use of depreciation deductions for his own businesses in a manner similar to the pattern of depreciation deductions charged in the Superceding Indictment. The Government argues that this evidence shows Turner's personal knowledge of factors bearing upon the use of such deductions, identity of the wrongdoer, and absence of mistake. The Government also states that information in Turner's 2005 tax return rebuts statements made by Turner in his interview that Rhonda Shelton owned and operated the tax preparation business. The Court finds this evidence admissible pursuant to Rule 404(b). The Court also finds this evidence has probative value that is not outweighed by unfair prejudice to Turner.

*3. Evidence of Turner's Alleged False Representations that he Worked for the IRS*

The Government states that Turner represented to his customers that he used to work for the IRS. For example, he allegedly told one customer that when he worked for the IRS he "screwed people and now he wants to get people their money back." The Government argues that this evidence is admissible because it is inextricable intertwined with Turner's customer dealings in his tax preparation business. He allegedly made these false statements in order to attract clients to his business and convince them he knew how to use tax regulations and rules to benefit them.

Background evidence may be admissible when it "consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary

5

to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). "Proper background evidence has a causal, temporal or spatial connection with the charged offense," such as when it "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.*

The false representations made by Turner are relevant as to why individuals may have chosen Turner to prepare their tax returns, and to explain their confidence in Turner as a former IRS employee. This background information is necessary to explain the story of Turner allegedly preparing false tax returns for these customers. Therefore, the evidence of false representations made by Turner is admissible.

Turner also objects to the admission of the alleged statement that "he hated the IRS and that the IRS wouldn't get a dime from him." Turner argues that the statement could only relate to his personal tax returns and not returns he prepared for others. There are two inferences, however, that can be made from the statement. Considered in the context of the other statements it could also relate to how he prepared returns for others. The Court finds the testimony admissible.

*4. Evidence of Investments Made by Customers in Turner's Cabinet Making Business*

Turner admits that he sought small investments from some of his customers in a cabinet making business that ultimately failed. He argues that even though his actions were proper, the jury may believe he is a dishonest person. The Government states that in several instances evidence regarding these investments are inextricably intertwined with information in customer's tax returns. For example, the Government states that money invested in Turner's cabinet making

business was referenced on some of his customers's Schedule C forms as money they earned from a side business. The Court agrees that the investment evidence is an integral part of these witnesses' stories, and therefore admissible for this limited purpose.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Preclude Government's Expert Witness, or for a Daubert Hearing (DN 45) is DENIED and Defendant's Motion in Limine (DN 46) is DENIED IN PART and GRANTED IN PART. IRS Revenue Agent Robert L. Hayden's expert/summary testimony is admissible; Turner's 2003, 2004, and 2005 returns are admissible for limited purposes; evidence that Turner represented to his taxpayer customers that he used to work for the IRS is admissible; and evidence that certain customers invested money in Turner's cabinet making business is admissible for limited purposes. Turner's statement that he intentionally did not file his personal tax returns from 1998 through 2005 because of a disagreement with the IRS over an audit of his 1989 tax return, and the fact that he did not file these returns until 2006, is inadmissible at trial.